## MANOR COUNTRY CLUB, INC. *v.* RICHARDSON

[No. 248, September Term, 1968.]

*Decided May 1, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Albert E. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellant.

*Craig S. Rice,* with whom were *Heeney, McAuliffe & Mc-Auliffe* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On December 8, 1967, Mrs. Ellen Margaret Richardson, appellee, filed suit against Manor Country Club, Inc. (Club), the appellant, for damages sustained as the result of a fall while a business invitee on the Club's premises. At the conclusion of the plaintiff's case, the Club moved for a directed verdict on the grounds that the appellee had failed to prove primary negligence, that she was contributorily negligent as a matter of law and that her injury was caused by her sole negligence. That motion and the Club's motion for a directed verdict at the end of all the evidence were denied by the lower court. After the jury returned a verdict for Mrs. Richardson, the appellant made motions for judgment n.o.v. or in the alternative for a new trial. Both motions were denied and judgment was entered for Mrs. Richardson. Manor has appealed to this Court, and argues that (1) there was no evidence of primary negligence on its part, and (2) Mrs. Richardson was guilty of contributory negligence as a matter of law.

On Mother's Day, May 9, 1965, Robert Grissett invited his mother-in-law, Mrs. Richardson, to have dinner with him and his family at Manor Country Club. Upon their arrival at 5:00

p.m., the "maitre d' " advised them that their table was not yet ready and directed them to a lounge area where they waited for a few minutes before being escorted to their table. Because of the large number of persons expected for dinner on this occasion, the Club had utilized additional space beyond the regular dining room in an area normally used as a cocktail lounge. The table reserved by Mr. Grissett was located in that area and was placed about two and a half feet in front of the hearth of a large stone fireplace. The height of the hearth from the floor was eight inches and its length was nine feet eight inches. It extended two and a half to three feet from the fireplace. Their table, which was covered with a white tablecloth, was arranged for six places with six chairs, three on either side of the table. As Mrs. Richardson and her party approached the table, they walked alongside this fireplace which extended from floor to ceiling. The appellee was to be seated in the center chair, with her back to the fireplace and hearth. As she proceeded to her seat she hit her toe on the hearth and fell to the floor, fracturing her wrist on the edge of the hearth.

Mrs. Richardson testified that she had never been to the cocktail area before, that she did not know the stone wall was a fireplace and that she did not know that there was a hearth at the end of the "wall." When asked if she was looking at the floor when she approached the table, the appellee answered that she could not remember where she was looking. She also described the lighting as "dining light."

The appellant's sole witness was John Waltman, who was employed as the "maitre d' " for the Club at the time of the occurrence and as such he had arranged the dining facilities that day. He described the fireplace as having a light color, either brown or tan and stated that the hearth which was gray in color extended two and a half to three feet from the fireplace. He testified that after the table had been set up in the cocktail lounge, he walked between it and the fireplace to make sure that there was enough space for the waiters to get through. He admitted that the table might have extended a little past the edge of the hearth in the direction from which the party approached. The floor of the room he described as oak tile. Mr. Waltman stated that the room was well lighted, that all of the recessed lights

were on, and that a table lamp in the lounge area was turned on. Further, light came in through beige colored drapes which were opposite the fireplace at a distance of seventeen and a half feet.

Section 343 of the Restatement (Second) of Torts states in part that a possessor of land is subject to liability for bodily harm caused to business invitees by a natural or artificial condition thereon if, but only if, he "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it . . . ." This statement of the law has been approved by this Court on many occasions. *E.g., Raff v. Acme Markets,* 247 Md. 591, 233 A. 2d 786; *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433; *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 164 A. 2d 273. Applying this section's standards to the present case, this Court concludes that the lower court should have directed a verdict for the appellant on the ground that Mrs. Richardson failed to establish primary negligence on the part of the Club.

It is readily apparent that the injuries complained of were not the result of any latent, concealed, or extraordinary condition of the appellant's premises. Certainly it is not unusual for a country club to have fireplaces in its lounge or dining room. It is difficult, if not impossible, to imagine that anyone walking alongside this fireplace could not have observed it as well as the hearth. While the lighting in the cocktail lounge may have been subdued, the undisputed evidence is that it was the ordinary type of "dining light." The evidence established that the chairs were pushed under and against the table so that there was ample space to walk between the hearth and the table, which all the parties agreed was about two and a half feet. We find nothing about this arrangement which would have reasonably indicated to the Club that it was creating an unreasonable risk. As this Court stated in *Aleshire v. State,* 225 Md. 355, 366, 170 A. 2d 758, 763: "The motion of foreseeability has been correlated with the development of liability for negligence for many years; and injuries which could by no reasonable possibility have been foreseen, and which no reasonably prudent person would

have apprehended, cannot form the basis for actionable negligence." *Ragonese v. Hilferty,* 231 Md. 520, 191 A. 2d 422; *Sanders v. Williams,* 209 Md. 149, 120 A. 2d 397; *Texas Company v. Pecora,* 208 Md. 281, 118 A. 2d 377.

Further, even if the Club had the realization that it created an unreasonable risk, there would be no reason why it could not assume that it would have been discovered by Mrs. Richardson. The appellee contends that the colors of the fireplace, the floor, and the tablecloth had a tendency to blend. A similar argument was not accepted by this Court in *Evans v. Hot Shoppes, Inc., supra.*

We hold that the appellee failed to establish primary negligence on the appellant's part, and consequently the Club's motion for a directed verdict at the close of all of the evidence should have been granted. Since we conclude from the record before us that there was no legally sufficient evidence of primary negligence, we need not reach the question of whether Mrs. Richardson was guilty of contributory negligence as a matter of law.

> *Judgment reversed without a new trial. Costs to be paid by the appellee.*